SHARP, Judge.
Henderson appeals from an order terminating her parental rights to her two children, a daughter, age eight, and a son, age six. The primary basis for termination was Henderson’s failure and inability to earn a sufficient income to support herself and her children, and to provide suitable housing for them. We reverse. Although the record supports the trial judge’s findings that Henderson did not comply with all the provisions of the third Performance Agreement entered into in 1984, it does not establish with clear and convincing evidence that Henderson’s failure was substantial and as to the requirements she defaulted on, that they were not beyond her control. § 39.-41(l)(f)l.d, Fla.Stat. (1983).[1]
The essence of this case is summarized in paragraph 12 of the trial judge’s final order:
Both children have been neglected; their mother has failed to provide a home for them and she has failed to substantially comply with her Performance Agreement. The mother now has another infant in her care and it is questionable that she will be able to provide for that child either. These two children have already been in foster care in excess of three years and a permanent plan must be made for them. It is clearly and convincingly in the manifest best interest of the children that they be placed for permanent adoption.
While we agree with the trial judge’s statements that the adoption of these children is in their best interest, we do not think there is a legally sufficient basis to terminate parental rights in this case.
*199 Henderson gave birth to the first child when she was only fourteen, and to the second when she was sixteen. She had only a tenth grade education, and held sporadic, part-time jobs. She had no choice but to live with her mother in crowded, squalid conditions. Four or five adults, including Henderson, her mother, and siblings shared a small four bedroom home. During 1981 when Henderson was eighteen, her mother ordered her out of the house and the children were left unattended and neglected in the grandmother’s home. This situation led to the children being declared dependent in 1982 and placed in foster care.
Since that time, Henderson entered into three Performance Agreements. The second, signed in 1983, ended with the social worker’s conclusion that Henderson had completed all the requirements except obtaining better housing. In 1984, Henderson went through a divorce, which resulted in her losing custody of a baby daughter born of the marriage. Distraught and depressed, she consented to have these children adopted, but she later withdrew her consent, with the court’s permission.
The third Performance Agreement entered into by Henderson and the Department in 1984 contained many more vigorous requirements than the prior ones. They were:
(1) Secure adequate and stable housing for entire family and maintain residence without disruption through performance period;
(2) Advise HRS counselor of any significant changes, including change of residence, employment, health or marital status;
(3) Complete psychiatric evaluation;
(4) Secure mental health counselling and participate in weekly sessions, or as designated by therapist, throughout period of this Agreement;
(5) Maintain weekly communication with children of minimum of one letter weekly per child; one telephone call bi-weekly and personal visitation required once per month;
(6) Obtain stable employment and maintain a steady job throughout performance period;
(7) Complete necessary study and requirements for obtaining GED.
With regard to all but numbers (1) and (6), the record shows Henderson made a substantial effort to comply. She visited the children bi-monthly. She was evaluated in 1982 and thereafter by psychiatrists and psychologists. She was counseled during the term of the Performance Agreements by two different counselors at the Beth Johnson Community Mental Health Center. They thought she had made progress in self-esteem, maturation, and ability to be an adequate parent. She had been attending classes four nights a week to obtain her GED, and was a few weeks short of being up to the levels required to take the test. Following that, she planned to enroll in vocational school to be trained as a cashier.
At the time of the termination hearing, Henderson’s income was only $136.00 per month, from A.F.D.C., for a newborn daughter. Following delivery of this last child, Henderson had a tubal ligation. This last pregnancy and delivery impeded her efforts to earn sufficient income to procure independent housing for her family. At the time of the termination hearing, Henderson testified she had applied to all social service agencies. she could locate in the community for low income or subsidized housing, and was on waiting lists. The Department had made no effort itself to help Henderson find separate living quarters.
In summary, Henderson’s parental rights are in jeopardy in this case primarily because she is poor, uneducated, and without sufficient financial resources to care for her children in the manner the Department deems advisable. These are insufficient reasons to terminate parental rights. In the Interest of T.S. v. Department of Health and Rehabilitative Services, 464 So.2d 677 (Fla. 5th DCA 1985). While it is contrary to the best interests of the chil *200 dren that they be returned to Henderson, and no doubt they would fare far better in an adoptive home, that also is not the issue in a termination case. Nor is the fact that Henderson will continue to require help financially and otherwise from the state to care for these children an issue.
Only by clear and convincing evidence of neglect, abuse or abandonment by the natural parent can this most precious relationship of parent and child be severed by the state. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct 1388, 71 L.Ed.2d 599 (1982); In the Interest of L.T. v. Department of Health and Rehabilitative Services, 464 So.2d 201 (Fla. 5th DCA 1985). These were not established here. Section 39.41(l)(f) provides termination may occur if a parent fails to substantially comply with a performance agreement, unless it is the result of conditions beyond the control of the parent. Assuming this statute is constitutional, an issue we do not address in this case, we think the record shows Henderson substantially complied with the performance agreement in most regards, and failed only on ones beyond her ability and control.
REVERSED.
DAUKSCH, J., concurs.
UPCHURCH, J., dissents without opinion.

. Revised § 39.41(l)(f)3.b, Fla.Stat. (1984).